Hoffheimer, J.
This is an action by the city of Cincinnati to specifically enforce the contract obligations of defendants under the fifty-year franchise granted by resolution of the board of administration, August 13,1896, and under and by virtue of authority conferred in the act commonly known as the Rogers Law, As part of the *306 relief prayed for, plaintiff demands an accounting as to the franchise tax due it under its said contract, the amount due, so it alleges, being unknown to plaintiff.
The city in effect contends that the Cincinnati Street Railway Company_ and its lessee, the Cincinnati Traction Company, hereinafter referred to as defendant, is not performing its obligations under the franchise contract, in that it is not paying as the contract and its modification requires, namely, six per cent, per annum upon the gross earnings of all defendant’s “routes or lines of roads” within the city of Cincinnati; the contention being that defendant by voluntary agreement with certain interurban companies permits such companies to use its routes or lines of roads on the payment by said companies of a percentage of the fares collected, .and the relative fractional amount of the freight, and the claim is that defendant (in instances in which the traffic agreements are involved) thereupon pays to the city only on such amounts as it thus actually receives.
The city contends that the six per cent, should be calculated upon the gross earnings of the franchise for operating the “routes or lines of roads” no matter from what “source” they are collected or derived, thus including the part retained by the interurban companies. On the other hand, defendant denies that it is liable for any percentage upon the gross receipts or earnings derived from passengers and freight carried in the cars of the interurban companies within the corporate limits of the city of Cincinnati other than upon the proportion received by' them, which conclusion is. evidently based on certain matters set up in the answer, and to all of which plaintiff demurs as being insufficient to constitute a defense.
The question thus raised by the demurrer is one of prime importance, and it affects the right of the city to the enjoyment of benefits supposedly fixed by the fifty-year franchise granted defendant. A consideration of the question involves the construction and meaning of certain terms and conditions in that franchise, as well as their force and effect, likewise the change made by the modification of September 14, 1903, and the effect thereof, and also the traffic agreements entered into by and between defendant and the interurban roads, and the effect if any, of such agreements on the franchise granted to defendant.
*307 The original franchise granted defendant by the board of administration, August 13, 1896, contains the following:
“Said company shall pay * * * 5 per cent, of the gross earnings from every source of its said routes or lines of roads, or any extension thereof now owned or hereafter acquired by said company, and also on all future extension of any of its lines, and all future connection lines, within or without the corporation limits of the city of Cincinnati, and within the county of Hamilton, on which it has not made such payment."
In Cincinnati v. Mt. Auburn Ry. Co., 28 Bull., 276, affd. 54 O. S., 645, the general term of this court in an able opinion by Rufus B. Smith, J., considering language not as broad as that here employed and involving a tax that was to be “2½ per cent, of the gross earnings from every source of such company; ’ ’ held: that “Whatever earnings of the road are attributable to the city’s grant, and are made from a use of that grant, must bear the 2½ per cent, burden.”
This seems to me decisive of the contention here, particularly so, in view of the broader and more comprehensive language used in this grant. The question, therefore, is not one of actual receipts of the company, but gross earnings, and gross earnings must be considered as that which flows from the franchise itself, that which is “attributable to the city’s grant” and made from and through the use of that grant.
Further, and as negativing, if that were necessary, any idea of apportionment under traffic agreements, we find that the company ' shall pay 5 per cent, of the gross earnings from every source, of its said “routes or lines of roads,” and also on all its said “routes or lines of roads, or any extensions now owned or hereafter acquired, and also on all future extensions of any of its lines, and all future connection lines, within or without the corporate limits of Cincinnati and within the county of Hamil-. ton. ’ ’
Certainly the earnings of the interurban companies, which are permitted by defendant to use its “routes or lines of roads” and to charge for and collect for the haul of passengers or freight over same, are a “source” of earnings directly “attributable to the city’s grant.” And I am unable to see wherein the legal *308 effect of the laoigtiage of'the grant is rendered less efficacious, because the defendant through a fraffic agreement permits such road to collect for the use of its “routes or lines of roads” — a permission only made possible under plaintiff’s grant to defendant. Finally, if more were needed, the 5 per cent, of earnings is due on all future connection lines within or without the corporate limits of Cincinnati and within the county of Hamilton, and are not the interurban roads fairly embraced within such language 1
Now the modification referred to, appears in the ordinance of council, and evidences the consent of the city to receive from defendant, in lieu of the ear license fees theretofore required under the franchise, an additional 1 per cent, per annum upon the gross receipts of the company.
It is argued by defendant that this modification changed the 5 per cent, on gross earnings in the original franchise to 6 per cent, on the gross receipts of the company. The answer does not so aver it, nor does that appear from the ordinance itself. This modification had nothing to do with the 5 per cent, clause. In view of the apparently more restricted language of the modifying ordinance it is barely possible that it was intended to restrict the additional 1 per cent, to amounts actually received by the defendant company. It would seem to me, however, in view of Cincinnati v. Mt. Auburn Cable Ry. Co., (supra), and notwithstanding the narrower language used, that the language must be held to include all the receipts and earnings ‘ ‘ as are attributable to the franchise” as in the 5 per cent, clause, and that it can not be restricted to the actual receipts of the defendant company. And even were the mind to rest in doubt about it, as against the beneficiary of a franchise of this character, such doubt must be resolved in favor of the city. Blair v. Chicago, 201 U. S., 400; Cincinnati v. Mt. Auburn Cable Ry. Co., supra; State v. Hudson River Tr. Co., 73 N. J., 227.
Now if the court is not thus far in error, it would follow that the terms and conditions of the franchise are not being complied with, when defendant pays as it states it does, 6 per cent, on the amounts it actually receives, instead of 6 per cent, on the gross earnings accordingly as we understand that to mean.
*309 The franchise granted by the city to defendant is a contract and it can not be altered without mutual consent. The legislation authorizing traffic agreements (May 17, 1894) was not intended to nor did it alter or affect the contract plaintiff has with defendant. That legislation simply made it possible for the urban and interurban road to make a lawful traffic agreement. State v. Traction Co., 64 O. S., 272. This original contract does not control the interurban road; it does, however, impose terms and conditions on the defendant and it is these terms and conditions that plaintiff now. seeks to enforce.
Under such a state of facts Int. Ry. & Ter. Co. v. Cincinnati, 75 O. S., 196, known as the “transfer case.” and wherein it was sought to compel an interchange of transfers (relied on by defendant as deciding a question similar to the one raised here), can have no application. That case simply held that in the absence of an ordinance requiring street railroads in a city generally to exchange transfers, the power conferred by statute to enter into a traffic agreement was not conditional upon an exchange of transfers.
In this action the city seeks nothing from the interurban; its claim is against defendant solely.
The traffic agreements, therefore, which were made under authority of the legislation referred to, can not affect plaintiff’s contract, the plaintiff not having been party thereto and not having approved of same in any manner whatsoever.
This being an action to enforce the terms and conditions of such contract, it follows that defendant can not by means of traffic agreements or otherwise disable itself or relieve itself from fully performing the convenants and restrictions that necessarily run with the franchise; nor can it evade any of the obligations thereunder by transferring any of its rights under the franchise (as by abandoning “a route” or part of a “route” to the interurban road)', nor can it, in any manner make the contract less valuable to the city. State, ex rel, v. Hudson River Trac. Co., 73 N. J. L., 227; Joyce on Franchises, Section 3, p. 205; Ft. Worth Ry. v. Allen (Tex. Civ. App.), 39 So. West, 125, 127; Peoria & Rock Isl. Ry. Co. v. Coal Min. Co., 68 Ills., 489; Thompson v. Schenectady Ry. Co., 131 Fed. Rep., 577; Erie v. Erie Tr. Co., 222 Pa. St., 43.
*310 In conclusion, I find myself wholly unable to agree with counsel for defendant that a construction that would compel defendant to pay 6 per cent, on gross earnings instead of on the amounts received by it would be ‘ ‘ shocking in its unfairness and want of equity,” for the reason, among others, that when the original franchise was granted, Cincinnati v. Mt. Auburn Ry. had already been decided; the legislation authorizing traffic agreements was in existence and defendant could have proposed other terms, unless it was intended that the language used have the precise meaning given it. Furthermore, since defendant voluntarily enters into the traffic agreeemnts, it has it within its power to protect itself in the terms thereof.
On the other hand, it would seem to me, the injustice, and “absurd consequences” would be on the side of the city, if a construction were to obtain that would make it possible for defendant, to alter or extinguish at will, the valuable benefits that were to accrue to the city — conditions annexed to the grant —whenever, or as often, as defendant chose to enter into traffic agreements, to which agreements the city was in no way a party.
What the court said in the Mt. Auburn case, with reference to the contention there, would seem to be pertinent here also:
“There is, too, a principle of construction with'reference to statutes that will apply quite as well to ordinances that would forbid such a construction as is contended for by plaintiff. The principle is that:
“ 'It is the plain duty of the courts in the interpretation of a statute unless restrained by the rigid and inflexible letter of it, to lean most strongly to that view which will avoid absurd consequences, injustice and even great inconvenience, for none of these can be presumed to have been within the legislative intent.’ ” (Citing Moore v. Given, 39 O. S., 663.)
For the reasons given, the answer, in my opinion, fails to set up anything sufficient to constitute a defense, and the demurrer is accordingly sustained.